UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**STEVEN TRAHAN**  **CASE NO. 2:21-CV-02281**

**VERSUS**  **JUDGE JAMES D. CAIN, JR.**

**UNITED OF OMAHA LIFE INSURANCE CO**  **MAGISTRATE JUDGE KAY**

**MEMORANDUM RULING**

Before the court are memoranda filed by plaintiff Steven Trahan and defendant United of Omaha Life Insurance Company ("United"). The memoranda are filed under the court's ERISA case order and relate to plaintiff's challenge to a denial of benefits under an ERISA plan administered by the defendant.

**I.**
**BACKGROUND**

This suit arises from an application for long-term disability benefits by plaintiff, who stopped working in 2020 due to health issues including hypertension and anxiety. United denied plaintiff's application and maintained that stance through plaintiff's exhaustion of administrative remedies. Plaintiff now files suit in this court, seeking reversal of the decision.

**A. The ERISA Plan**

Plaintiff began working for Cameron LNG in 2007 and remained with that company until he stopped working due to his health issues at the age of sixty-four, in 2020. Doc. 10,

p. 48. Through this employment he is insured under Group Policy No. GLTD-BGFY ("the policy"), issued by United and providing long- and short-term disability benefits. *Id.* at 1. The policy provides:

> This Policy will be interpreted under the Employee Retirement Income Security Act of 1974, as amended (ERISA). This Policy is issued in the State of Texas. To the extent state law is not preempted by ERISA, and only to that extent, this Policy will also be interpreted under the law of the State of Texas, without giving effect to the principles of conflicts of law of that State or any other state. Any part of this Policy which is in conflict with the applicable laws of the State of Texas is changed to conform to the minimum requirements of that State's laws.

*Id.* The policy defines disability as "a significant change in . . . mental or physical functional capacity," caused by injury or sickness, that prevents the insured "from performing at least one of the Material Duties of [his] Regular Occupation on a part-time or full-time basis[.]" *Id.* at 37 (capitalization in original). A disability may be caused by a mental disorder, which is defined as "any condition or disease, regardless of its cause, listed in the most recent edition of the International Classification of Diseases (ICD) and the Diagnostic and Statistical Manual of Mental Disorders (DSM) as a mental disorder." *Id.* at 39. For disabilities caused by a mental disorder, benefits are subject to a 24-month limitation. *Id.* at 18.

  **B. The Challenged Decisions**

   **1. Short-term disability claim**

In 2020 plaintiff was working for Cameron LNG as Health, Industrial Hygiene, Safety & Emergency Manager. *Id.* at 48. On January 23 of that year he saw his primary care provider, Dr. Brian Clements, on a follow-up visit for previously diagnosed

hypertension. *Id.* at 136. At that time, plaintiff was 63 years old and taking the blood pressure medications metoprolol succinate and microzide daily as well as the benzodiazepine alprazolam (Xanax) twice a day as needed. *Id.* Plaintiff's blood pressure at the visit was recorded as 136/80 mmHg, though he stated it could spike as high as 170/105 with emotional stressors. *Id.* at 136–37.

Plaintiff next saw Dr. Clements on July 21, 2020. *Id.* at 133–35. At this visit it was recorded that his blood pressure was up, reading 158/90 mmHg at the doctor's office, and that the plaintiff had experienced a spike to a systolic of 170 along with neurological symptoms at work the previous day. *Id.* Dr. Clements ordered plaintiff to take twelve weeks of leave from work and follow up in four weeks. *Id.* He also increased plaintiff's dosage of metoprolol to twice daily and added the blood pressure medication losartan. *Id.* At a follow-up visit on August 18, his in-office blood pressure had improved to 137/78 mmHg and the doctor recorded that his hypertension had "improved, [but] spikes w stressors and thoughts of hostile work environment." *Id.* at 131. The next visit, on September 18, took place over the phone due to the COVID-19 pandemic and Hurricane Laura. *Id.* at 129–30. Dr. Clements noted: "[Hypertension] better, anxiety/stress, avoid high stress situations, B/P spikes, headaches and anxiety attacks, to avoid presentations, conference meetings, stressful coworker interactions, advise remain off work." *Id.* at 130. Lab work conducted after that visit also showed abnormal results.[1] The following visit, on October 2, took place

---

[1] The claims file records:
    09/18/2020- Lab work completed (abnormal results)- ALT (alanine transaminase) 42 (high); Sodium 148 (high); Chloride 110 (high); WBC 3.55 (low); RBC 4.50 (low); Hematocrit 41.9 (low); MCH (mean corpuscular hemoglobin) 33.1 (high); Absolute neutrophil count 1.54 (low).

in person. *Id.* at 126–27. Dr. Clements noted that the blood pressure log showed today's reading to be the "best . . . yet" but advised that plaintiff continue to remain off work. *Id.*

On October 14, 2020, plaintiff submitted his claim for short-term disability benefits with an onset date of July 21, 2020. *Id.* at 1741–44. He identified his conditions as "hypertension, anxiety, and stress." *Id.* at 1745. Dr. Clements provided an Attending Physician Statement, identifying limitations in attention, concentration, and decision-making that prevented plaintiff from performing most of his job functions. *Id.* at 1745–46. United reviewed medical records from the date of disability onward, interviewed plaintiff, and attempted to contact Dr. Clements. *Id.* at 1761–62. It then determined that the evidence did not support a claim of disability and conveyed this information to plaintiff on November 11, 2020. *Id.* at 1641, 1761. In the denial letter United elaborated:

> The Attending Physician Statement completed by Dr. Clements gives a diagnosis of hypertension, anxiety and stress and restrictions of no work as of July 21, 2020. The Office Visit Notes in file from Dr. Clements show that on July 21, 2020 you were given Xanax, advised to be out of work for twelve weeks and told to keep a log of your blood pressures. You advised on a phone call on November 05, 2020 that you never kept a blood pressure log. The office visit notes from Dr. Clements were reviewed by a Medical Consultant on November 10, 2020 and the review concluded that the records showed no psychiatric symptom findings on exam, no intensity of symptoms and no referral to psychiatry.
>
> In summary, the documentation in file indicates that you did not have significant impairment preventing you from performing your material and

---

09/29/2020- Lab work completed (abnormal results)- Creatinine 1.26 (high); AST (Aspartate transaminase) 41 (high); ALT (Alanine transaminase) 56 (high); Carbon Dioxide 30 (high); GFR (Globular filtration rate) 57.80 (low); Cholesterol 211 (high); LDL (low-density lipoproteins) 132.6 (high); WBC (white blood cells) 3.44 (low); RBC (red blood cells) 4.61 (low); MCV (mean corpuscular volume) 96.7 (high); MCHC (mean corpuscular hemoglobin concentration) 33.0 (high); Absolute Neutrophil count 1.54 (low).

*Id.* at 75.

Page 4 of 18

>substantial duties of your regular job. Therefore, no benefits are payable, and your claim has been denied.

*Id.* at 1625.

At the next visit, on November 19, Dr. Clements recorded that plaintiff was experiencing tension headaches, panic attacks, and bad dreams relating to thoughts of his work, despite seeing a counselor. *Id.* at 123. During the visit plaintiff's blood pressure rose to 155/80 mmHg upon discussion of work. *Id.* at 124. Dr. Clements stated that he was "concerned with a situation here consistent with PTSD," agreed with plaintiff's decision to appeal the denial of disability benefits, recommended an additional 90 days off of work, and referred the plaintiff to psychiatrist Dr. Patrick Hayes. *Id.*

The appeal was submitted on December 4, 2020. *Id.* at 1501–03. On the same date the employer requested that United move forward with processing the claim for long-term disability benefits. *Id.* at 1431–35. In connection with the appeal United considered new information, in the form of the record of plaintiff's November 19 visit to Dr. Clements. *Id.* at 1501–03. United reviewed the file along with the additional information and once again denied the claim. *Id.* at 1443–50. Plaintiff's counsel advised United that it would appeal the decision and United proceeded with processing the long-term disability claim. *See id.* at 1393 (emails between United representative and Cameron LNG representative).

### 2. Long-term disability claim

The policy does not distinguish between long- and short-term with regard to how "disability" is defined, explaining the term as "a significant change in . . . mental or physical functional capacity," caused by injury or sickness, that prevents the insured "from

performing at least one of the Material Duties of [his] Regular Occupation on a part-time or full-time basis[.]" *Id.* at 37 (capitalization in original). After the Elimination Period, which is defined as the number of days of disability before the claimant can receive benefits, the claimant must also show that the injury or sickness renders him "unable to generate Current Earnings which exceed 99% of Your Basic Monthly Earnings[.]" *Id.*

In connection with his long-term disability application, plaintiff submitted records from Dr. Clements and Elite Medical Wellness ("Elite") along with affidavits from friends and family members. In addition to the records described above from Dr. Clements, plaintiff included treatment records for the five years preceding the disability claim. The records from 2015 to 2018 are routine annual physicals with no mention of hypertension or anxiety. *Id.* at 1245–56. The prescription for alprazolam (Xanax), at a dosage of .25 mg/day, first appeared in the record for a visit on March 28, 2019, as did treatment for hypertension. *Id.* at 1243–44. The ensuing records are summarized above. Plaintiff also included the record of his most recent visit to Dr. Clements, on January 25, 2021. *Id.* at 1222–23. On this visit plaintiff's blood pressure was 138/83 mmHg; he was ordered to continue with psychiatric care and follow up with Dr. Clements in three months. *Id.*

From Elite, United received records showing plaintiff underwent an intake assessment on November 23, 2020. *Id.* at 1260–62. His mental status examination showed mild-to-moderate anxious mood and affect, moderately impaired concentration, and impaired memory. *Id.* at 1259–61. He told the intake counselor that he was taking about 6 mg of Xanax every other day PRN for panic attacks. *Id.* at 1260. He also stated that he was sleeping less than normal and experiencing nightmares. *Id.* The intake counselor recorded

the focus of the therapy as "recent anxiety and panic attacks [relating to] work" and recommended some grounding techniques for plaintiff to try. *Id.*

The next set of records from Elite is a psychiatric intake performed on February 9, 2021. *Id.* at 1257–59. Plaintiff's chief complaint is recorded as "My job turned into the job of 2-3 people" and his experience of panic attacks and stress related to work. *Id.* at 1257. He also recorded the following symptoms: sleep problems, low energy (possibly related to sleep), poor concentration, appetite problems, distractibility, irritability, anxiety triggered by work, and headaches triggered by stress. *Id.* at 1257–58. Plaintiff was prescribed hydroxyzine (Atarax), an antihistamine used to treat anxiety, along with a trial of the beta blocker propranolol and the antidepressant escitalopram (Lexapro), with instructions to follow up in six weeks. *Id.* at 1259. The chart shows a diagnosis of F43.8, the ICD.10 code for "other reaction to severe stress." *Id.*

Finally, plaintiff provided affidavits from himself and friends and family members. In his own affidavit he stated that, from his last day of work through the present, he was "unable to perform work related tasks such as attending meetings and presentations without experiencing an anxiety attack and tensions headaches." *Id.* at 1183–84. He listed his medications and stated that the metoprolol succinate helped with his memory but also caused drowsiness and dizziness, hindering him in all activities of daily living and leading to errors and inability to keep pace. *Id.* at 1183. He also stated:

> Whether or not taking the above medications, I am unable to concentrate on one task and experience increased anxiety over the pressure to complete my work. My anxiety grows to the point where I have to physically leave work, take a Xanax, and find a place to lay down for 45–60 minutes. I still experience headaches and blurred vision after taking a 45–60 minute break.

*Id.* He said that anxiety over work interrupted his sleep and caused "dramatic fatigue" during the day. *Id.* Lastly, he stated that when he exceeded the activities described above, his anxiety and blood pressure would rise and he would experience headaches, blurred vision, and shortness of breath. *Id.* Even after taking a Xanax, he would have to lie down for two to four hours to decompress from such an episode. *Id.*

Plaintiff also provided affidavits from his wife, Donna Trahan; son-in-law, Jason Burklow (a physician); and friends, Randy Oakley, Michael Easly, and Lee Snider, Jr. *Id.* at 1184–89. All five individuals stated that they observed and conversed with plaintiff regularly, and that the information in his affidavit was true and consistent with their observations of him. *Id.* In a letter Dr. Clements stated that he had reviewed plaintiff's affidavit and found the statements "credible, consistent with and expected given his overall medical condition and my objective serial clinical examinations as well as all conducted objective diagnostic studies to date." *Id.* at 1190. He then opined that plaintiff was unable to engage in full-time work due to his medical condition and that this condition is not expected to improve, thus rendering plaintiff "permanently disabled from any type of gainful employment." *Id.*

This information was reviewed by clinical nurse consultant Grey Taulborg for United. *Id.* at 785–92. To the referral question "Are the restrictions and limitations as asserted by the provider supported by the documentation in file?" he answered:

> Restrictions and limitations are not evident in the available documentation. While the claim holder reported a history of anxiety (controlled with Alprazolam 0.25 milligrams twice daily since 2019), has exam findings and there were escalations in treatment during the 02/09/2021 office visit with

> Dr. Hayes, the exam findings noted on 07/21/2020 (last day worked) and going forward (prior to 02/09/2021) were primarily normal and do not corroborate functional impairment. The documentation does not demonstrate global impairments of psychiatric function, limited ability to sustain focus and concentration, limited ability to effectively interact. There was no evidence of any observable impairments in grooming, speech or cognition. The provider opined the disorder as impairing; however, the interventions (blood pressure medication, time off work) were modest without referral to a higher level of care (psychiatry, cardiology, neurology) until months later. Office visits every 4-6 weeks is inconsistent with the treatment needs of an impairing condition. Given the claim holder's symptoms are related to work or thinking/dreaming about work, (increased work load, toxic work environment, dealing with stressful interactions with people, conference meetings), this would be an example of a situational stressor related to occupation rather than an underlying psychiatric condition causing global functional impairment.

*Id.* at 791. Under Considerations/Next Steps, Taulborg stated:

> The claim holder indicated they had been seen for 6 months in therapy thru EAP [Employee Assistance Program]. If these visits occurred during the timeframe in question, consider obtaining EAP records.
>
> If all records have been received, consider referring for IPA.

*Id.* at 792.

United then referred the claim to psychiatrist Dr. Stephen Gilman for an independent assessment. *Id.* at 778–81. He attempted a telephone consultation with Dr. Clements but was unable to reach him. *Id.* at 778. He reviewed medical records from 2015 to 2021 and made the following conclusions:

> **1. Does the claimant meet the diagnostic criteria for the allegedly impairing diagnosis? Please indicate the basis for your determination.**
> The records presented are vague in regard to psychiatric symptom presentation. The primary care physician documents that anxiety is present as well as stress and also subjective concentration issues. There is no specific documentation of clinical issues related to concentration and no clinical testing. There is not adequate documentation to support any DSM-V related

anxiety disorder or psychiatric disorder. The documentation of symptoms is vague in that a diagnosis of anxiety disorder unspecified is not supported.

**2. Please indicate if you agree or disagree with the claimant's provider(s) that the claimant was impaired, from the perspective of your specialty, from 07/20/2020 to current. This response should include a. Why you agree or disagree with the treating provider's opinion regarding the claimant's level of functional impairment indicating the relevant medical facts from the available records, claim documentation, and any teleconferences that occur, which support your determination. b. If you agree with the physician that the claimant is impaired, indicate the nature and severity of any functional impairment(s). c. If you disagree with the providing physician, indicate the types of examination findings that could be obtained during the course of a typical examination that are missing.**

The records provided do not demonstrate functional impairments from a psychiatric perspective in this case for the time frame of interest. The provider does not indicate any significant problems with activities of daily living such as cooking and cleaning, bathing or caring for self. There are no clinical observations from any treating providers that would indicate such impairments. There are no specific significant cognitive deficits such as severe memory, concentration or focus issues that would translate into restrictions in functioning. No severe emotional dysregulation is present.

Therefore, from a psychiatric perspective, functional impairment is not supported from 7/20/2020 to current.

**3. If you have determined that the claimant does have functional impairment(s), please indicate from the perspective of your specialty any restrictions and/or limitations that the treating provider might have agreed to during your telephonic consultation, or that could be presented to the treating provider that might facilitate the claimant's return to work. Please be specific (i.e., cannot lift more than 25 pounds rather than no heavy lifting) and indicate when it would be appropriate to review if the restriction(s) remain necessary. Please note restriction(s) can include a portion of the review period and/or a period in the past. If it is your determination that no restrictions are supported, please advise what led you to this determination.**

From a psychiatric perspective, functional impairment is not supported from 7/20/2020 to current.

The records provided do not demonstrate functional impairments from a psychiatric perspective in this case for the time frame of interest. The provider does not indicate any significant problems with activities of daily living such as cooking and cleaning, bathing or caring for self. There are no

> clinical observations from any treating providers that would indicate such impairments. There are no specific significant cognitive deficits such as severe memory, concentration or focus issues that would translate into restrictions in functioning. No severe emotional dysregulation is present.

*Id.* at 780.

United then sent a denial letter dated May 6, 2021, to plaintiff's counsel, summarizing the record evidence at length as well as Dr. Gilman's opinions. *See id.* at 616–25. It offered the following rationale:

> The records consistently noted Mr. Trahan's reports of anxiety were related to work stress such as an increased work load, toxic work environment, dealing with stressful interactions with coworkers, conference, and thinking/dreaming about work. This is suggestive of a situation stressor related to occupation rather than an underlying psychiatric condition causing global functional impairment. The records failed to outline any dysfunction across life domains, with the exception of opining Mr. Trahan could not work. The records indicate this is a work related issues specific to this particular department within this particular company. Work related anxiety and conflicts with coworkers is not consistent with a psychiatric impairment that would preclude Mr. Trahan's ability to perform the Material Duties of his Regular Occupation. Please keep in mind that the disability policy covers the inability to perform the Material Duties of the Regular Occupation as outlined previously. It does not cover Mr. Trahan's disability from the job he was performing for his employer. While Mr. Trahan may have been experiencing work related issues with this particular employer, it does not insinuate that he could not perform the duties of his occupation for another employer.
> . . . .
> In summary, there is insufficient evidence to support Mr. Trahan suffered from a significant change in functioning when he ceased working on July 20, 2020. The provided medical documentation has failed to show that Mr. Trahan was suffering from a physical or psychiatric impairment that would preclude his ability to perform the Material Duties of his Regular Occupation when he ceased working on July 20, 2020, and going forward. Therefore, no benefits are payable, and Mr. Trahan's claim has been denied, as he did not satisfy the policy definition of Disability and Disabled.

*Id.* at 620–21.

### C. Appeal

Plaintiff requested a copy of his claim file and timely notified United of his appeal on June 15, 2021. *Id.* at 192. In connection with the appeal United obtained an Occupational Analysis ("OA") [*id.* at 479–80], peer reviews from internist Dr. Darius Schneider and psychiatrist Dr. Sarah Sicher [*id.* at 238–42, 221–27], and additional information from plaintiff [*id.* at 510–13, 494–95] in the form of responses to a questionnaire sent by United.

Plaintiff elected not to submit any additional records. *Id.* at 199. In his questionnaire responses, plaintiff reiterated the information from his medical records on his medications and providers. *Id.* at 494–95. He also described the impact of his illnesses on his daily activities, explaining that he could complete his usual activities at home but that headaches sometimes interfered. *Id.*

The OA analogized plaintiff's position with Cameron to the eDOT-defined occupation of Environmental Health and Safety Manager. *Id.* at 479–80. It noted that the physical demands of the job were comparatively light, qualifying the position as sedentary, but that the mental demands were higher:

> As reported by eDOT, the cognitive demands typically expected for this occupation are:
> - Frequent memory, short instruction memory, detailed instruction memory;
> - Frequent short instruction carrying out, detailed instruction carrying out, concentration & attention, work schedule, work routine, work distractions, work decisions, work completion;
> - Frequent public interaction, assignment/assistance, peer interaction; occasional work review, work behavior;
> - Frequent adaptation to change, hazard awareness, travel, independent planning

*Id.* Both of United's reviewers referenced the job description provided by Cameron, which provides a detailed list of tasks but not an overview of cognitive requirements, rather than the OA. *See id.* at 647–48.

Dr. Schneider's review included medical records and a telephone consultation with Dr. Clements. *Id.* at 238–42. The notes of that call state:

> In the peer to peer discussion with Dr. Clements, the treating physician, I learned, that the claimant has been dealing with concentration issues for a while and was having blood pressure spikes related to work stress and that Dr. Clements was afraid that the claimant may suffer a CVA [Cerebrovascular Accident], having seen something similar happen in another patient. According to Dr. Clements, the claimant is suffering from PTSD-like symptoms with nightmares and excessive anxiety. He has tried to make lifestyle changes, increased walking, with no improvement so far. The treating physician Dr. Clements confirms, that the claimant had cognitive issues when he spoke with him on the phone. A neuropsychological evaluation, however, was not done.

*Id.* at 238. Dr. Schneider found that the following diagnoses were supported by his review: anxiety with anxiety attacks, elevated blood pressure, and overweight. *Id.* at 241. He also concluded that plaintiff was appropriately treated for his elevated blood pressure and found no evidence of symptom exaggeration for secondary gain. *Id.* at 242. However, he noted no restrictions from the point of view of his specialty and stated that the restrictions provided were instead "pertinent to the claimant's mental health issues," on which he was unable to comment as an internal medicine specialist. *Id.* at 241.

Dr. Sicher also conducted a records review. She attempted a telephone consultation with Elite but was told that plaintiff had only had one appointment there in February 2021, and that the provider would not comment without a follow-up appointment. *Id.* at 223–24. She did not consult or attempt to consult with Dr. Clements. *See id.* She found that the

psychiatric diagnoses of anxiety and stress were supported by her review, but that these did not impact daily functioning. *Id.* at 225. She also found that functional restrictions and limitations—including those recommended by Dr. Clements—were not supported:

> Most of the mental health symptoms documented are per the claimant's self-report. Even though self-reported symptoms are important, they must be corroborated by clinical exam findings. The primary care provider does not indicate any significant problems with ADLs [Activities of Daily Living] such as caring for self, cooking, cleaning, or bathing. There is no clinical evidence of symptoms more typically associated with psychiatric impairment such as severe blunting, significantly impaired judgment, measured or significant cognitive impairment, disordered or disorganized thought processes, or self-injurious or reckless behavior.
> . . . .
> There is no referral to a higher level of care, medication treatment at high doses, or active SI/HI. There is no severe emotional dysregulation or specific cognitive deficits such as severe memory, concentration or focus problems that would translate into restrictions in functioning.

*Id.* at 225. Finally, she noted:

> The most recent medical on file is from 02/09/21, where the claimant reports poor concentration, appetite problems, distractibility, irritability, anxiety, panic attacks, and work finding complaints. MSE [Mental Status Examination] findings appear to be unremarkable except some word selection errors, moderately impaired concentration and attention, and impaired immediate memory, which are not stated to result in daily functional impairments. Given the entire clinical picture as well as the lack of any recent medical files beyond 02/09/21 to support severe cognitive and functional impairments that would translate into restrictions and/or limitations in functioning, functional restrictions and limitations are not supported as of 11/20/2020 through 07/02/2021.

*Id.* at 227.

On July 27, 2021, United denied the appeal via letter to plaintiff's counsel. *Id.* at 54–61. Plaintiff then filed suit in this court, seeking reversal of the decision. Doc. 1. Pursuant to the court's ERISA case order [doc. 8], the parties have lodged the

administrative record and filed briefs on their respective positions. Plaintiff asserts that the denial was erroneous under either a *de novo* or abuse of discretion standard, and that he is entitled to judgment as a matter of law as well as attorney fees, judicial interest, and court costs. Doc. 11. United asks the court to affirm its denial of long-term disability benefits. In the alternative, it argues that any benefits due to plaintiff are subject to the 24-month limitation for mental disorders. Doc. 12.

## II.
### STANDARD OF REVIEW

When a claim is governed by ERISA, the district court serves an appellate role to the appeal of the plan administrator's decision. *McCorkle v. Met. Life Ins. Co.*, 757 F.3d 452, 456 (5th Cir. 2014). Where the plan vests the administrator with discretionary authority to determine eligibility for benefits and interpret and enforce the provisions of the plan, the court's standard of review is for abuse of discretion. *White v. Life Ins. Co. of N. Am.*, 892 F.3d 762, 767 (5th Cir. 2018). Where, however, the plan does not delegate such authority to the administrator, "a denial of benefits . . . is to be reviewed under a *de novo* standard." *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018). The parties agree, and the court finds, that the *de novo* standard applies here.

Under this review the district court must "independently weigh the facts and opinions in the administrative record to determine whether the claimant has met his burden of showing that he is disabled within the meaning of the policy." *Batchelor v. Life Ins. Co. of N. Am.*, 504 F.Supp.3d 607, 609 (S.D. Tex. 2020) (quoting *Richards v. Hewlett-Packard Corp.*, 592 F.3d 232, 239 (1st Cir. 2010)). The plaintiff has the burden of proving he is

disabled within the policy's terms by a preponderance of the evidence, and the court gives no deference or presumption of correctness to defendant's denial of benefits. *Pike v. Hartford Life & Acc. Ins. Co.*, 368 F.Supp.3d 1018, 1030–31, 1072 (E.D. Tex. 2019) (citing *Oliver v. Aetna Life Ins. Co.*, 613 F. App'x 892, 896 (11th Cir. 2015)). "The correctness, not the reasonableness, of the denial of benefits is the court's only concern." *Id.* at 1035 (cleaned up).

### III.
#### APPLICATION

At issue in this matter whether plaintiff can show, based on a preponderance of evidence in the administrative record, that he is disabled under the plan's terms—in other words, that his conditions prevented him from performing at least one of the material functions of his regular occupation. Plaintiff argues that he has met this burden, based on the agreement of multiple physicians to his diagnoses of anxiety and hypertension as well as his treating physician's opinion that his resulting symptoms/medication side effects and stroke risk precluded him from working. He argues that the court should not credit the opinions of the external reviewers, particularly Dr. Sicher, on his disability status because they fail to address the risk of stroke raised by Dr. Clements and the significant stress and cognitive demands of his job.

Here the court agrees that there is inadequate information to qualify plaintiff's hypertension as a disability. The condition appeared adequately controlled with medication, plaintiff has admitted that he was not keeping a formal blood pressure log, and the concern about a potential stroke was only raised by Dr. Clements to the reviewing

internist, Dr. Schneider, while the claim was on appeal. Accordingly, United committed no error in rejecting this condition as a basis for obtaining disability benefits.

There is sufficient information, however, to show that plaintiff's anxiety rendered him disabled under the terms of the policy.[2] Plaintiff's job description and OA both show that his job had significant cognitive demands, requiring him to concentrate on the task at hand and timely synthesize and communicate information to others. Plaintiff has consistently and credibly complained, however, that he experienced severe anxiety and panic attacks, as well as medication side effects, that impaired his concentration. While there is no treating physician preference in the ERISA context, a court engaged in *de novo* review may evaluate and give appropriate weight to the treating physician's conclusions if it finds them to be reliable and probative. *Ingerson v. Principal Life Ins. Co.*, 2020 WL 3163074, at *12 (N.D. Tex. May 13, 2020) (citing *Pike*, 368 F.Supp.3d at 1044). Plaintiff has been treated for this condition by his primary care provider since March 2019, and numerous courts have acknowledged that mental health is within the scope of an internist or family practice doctor's expertise. *See Saccameno v. Ocwen Loan Svcg., LLC*, 2018 WL 10609878, at *1–*2 (N.D. Ill. Mar. 20, 2018) (collecting cases).

---

[2] The cases relied upon by United are mostly inapposite, as they were decided under an arbitrary and capricious standard of review. In the one exception, the court agreed with the plan administrator's decision that plaintiff had demonstrated sufficient improvement in his psychiatric condition to justify terminating disability benefits. *See Scarr v. Unum Life Ins. Co. of N. Am.*, 2007 WL 2021872 (M.D. Fla. July 12, 2007). United cites this case for the fact that the decision was affirmed, despite the fact that reviewers had noted a spike in plaintiff's depression over a two-month period within that time period. There the "spike" was surrounded by months of data reflecting improved functioning and the reviewer concluded based on the psychiatrist's notes that the spike was caused by plaintiff learning that her benefits had been terminated. Here, on the other hand, plaintiff continued to experience symptoms long after he stopped working and the fact that his symptoms might have been exacerbated by his anxiety at returning to work has no bearing on whether his condition was disabling.

Plaintiff has provided affidavits from those close to him corroborating his symptoms. While the reviewing psychiatrists focused on the impact of his symptoms on Activities of Daily Living, "disability" is defined under the policy by its impact on material job functions rather than ADLs—and Dr. Sicher acknowledged that plaintiff displayed "moderately impaired concentration and attention, and impaired immediate memory" in his psychiatric evaluation at Elite. Doc. 10, p. 227. Though plaintiff, his treatment providers, and the reviewing physicians all agreed that the anxiety is triggered in part by plaintiff's work and related stressors, plaintiff continued to experience symptoms for months after he stopped working in July 2020 and even experienced an increase in symptoms in November 2020. The record contains sufficient evidence to show that plaintiff was disabled within the meaning of the policy at the time he applied for long-term disability benefits, and plaintiff is therefore entitled to judgment as a matter of law on his claims. The court agrees, however, that the disability is subject to the 24-month mental disorder limitation.

## IV.
### CONCLUSION

For the reasons stated above, judgment on the record will be entered for plaintiff. The court will remand the matter to the plan administrator to determine the dates of eligibility and amount due.

**THUS DONE AND SIGNED** in Chambers on this 9th day of March, 2022.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**